UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.S. AND M.S., INDIVIDUALLY AND ON BEHALF OF M.S., <br><br> Plaintiffs, <br><br> v. <br><br> SCOTCH PLAINS FANWOOD REGIONAL BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No.: 21-1290 (JXN) (LDW) <br><br> **OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Plaintiffs M.S. and M.S.'s, individually and on behalf of their minor daughter, M.S.'s (collectively "Plaintiffs") motion for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 18.) Defendant Scotch Plains Fanwood Regional Board of Education ("Defendant" or "Scotch Plains") filed an opposition and cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 25.) Plaintiffs opposed Scotch Plains' cross-motion and replied in further support of their motion. (ECF No. 28.) This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiffs' motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted.

**I.    BACKGROUND**

Plaintiffs bring this action against Scotch Plains under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and Title II of Americans with Disabilities Act, 42 U.S.C. §

12131, *et seq.* ("ADA"). Specifically, Plaintiffs appeal the final administrative decision of the Honorable Jude-Anthony Tiscornia, New Jersey Administrative Law Judge ("ALJ"), issued on October 29, 2020, concerning the sufficiency of educational services provided by Scotch Plains to M.S., a student entitled to special education and related services. The overarching issue is whether M.S. received a free appropriate public education ("FAPE") as a student in the Scotch Plains-Fanwood Public School District. (*See generally* Complaint ("Compl."), ECF No. 1.)

A. **Statutory Framework**

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs[.]" 20 U.S.C. § 1400(d)(1)(A). States receiving federal education funding are required to provide every disabled child a FAPE. 20 U.S.C. § 1412(a)(1). "Special education and related services" are tailored to the disabled child's unique needs using an Individualized Education Program ("IEP"). 20 U.S.C. § 1401(16). "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *D.S. v. Bayonne Bd. Of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010); *see also* 20 U.S.C. § 1414(d)(1)(A). The IEP is not a "form document" and must "turn[] on the unique circumstances of the child for whom it is created." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017). It must be "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." *K.D. ex rel. Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 254 (3d Cir. 2018). Although the educational benefits conferred must be more than trivial, the IDEA does not require the school

district to provide a disabled child with the best possible education. *Hendrick Hudson Cent. Sch. Dist. Bd. Of Educ. V. Rowley*, 458 U.S. 176, 192 (1982).

The adequacy of an IEP can be challenged through "an administrative 'impartial due process hearing.'" *Ridley Sch. Dist. V. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (quoting 20 U.S.C. § 1415(f)). An aggrieved party can challenge the outcome of the due process hearing by "bring[ing] a civil action with respect to the complaint presented … in a district court of the United States[.]" 20 U.S.C § 1415(i)(2)(A).

### B. Factual Background and Procedural History

Plaintiffs M.S. and M.S. are the parents of M.S., a minor child who, in March of 2014, was diagnosed with dyslexia, a specific learning disorder with impairment in math, Attention Deficit Hyperactivity Disorder ("ADHD"), and Other Specified Anxiety Disorder. (Complaint ("Compl.") ¶¶ 13, 14, ECF No. 1; Plaintiff's Statement of Undisputed Material Facts ("PSOMF") ¶ 10, ECF No. 18-2.) Because of her dyslexia, M.S. has significant difficulty with decoding, reading fluency, and spelling. (PSOMF ¶¶ 15, 21.) Scotch Plains provided M.S. with an IEP during the 2016-17, 2017-18, and 2018-19 school years. (PSOMF ¶ 1.)

On February 25, 2017, Scotch Plains held a meeting to discuss M.S.'s reevaluation, determine continued eligibility, and draft an IEP for the remainder of M.S.'s fifth-grade year through March of the next school year. (PSOMF ¶ 73.) Scotch Plains reduced M.S.'s Reading Decoding class from sixty (60) minutes per day to forty-two (42) minutes per day beginning in the sixth grade. (PSOMF ¶ 77.) One of M.S.'s parent then requested that the school psychologist, Dr. Stephanie Cooper ("Dr. Cooper"), provide M.S.'s parents with a complete copy of M.S.'s cumulative and confidential records, including special education records, formal and informal correspondence, tests, evaluations, and teacher-to-teacher notes. (PSOMF ¶ 81.)

3

On February 9, 2018, M.S.'s parents wrote to Dr. Cooper and expressed the following concerns: the records contained no results from M.S.'s districtwide reading and writing benchmarks, that M.S. is becoming increasingly anxious about school and her inability to keep up with the workload, and that M.S. might have Dyscalculia and Dysgraphia. (PSOMF ¶ 82.) They also requested that the Director of Special Services, Lisa Rebimbas ("Rebimbas"), attend M.S.'s next IEP meeting on February 13, 2018. At this meeting, Scotch Plains drafted an IEP for the remainder of M.S.'s sixth-grade year (the 2017-18 school year) through February of the next school year. (PSOMF ¶ 80.)

On February 21, 2018, M.S.'s parents filed for mediation, seeking to prevent any change in placement until Scotch Plains provided more updated data on M.S.'s progress in terms of grade equivalency for Reading, Writing, Spelling, and Math and an independent educational evaluation to have a better understanding of M.S.'s needs in developing her IEP for the 2018-19 school year. (PSOMF ¶ 89.) Mediation was held on March 9, 2018, where the parties agreed that Scotch Plains would fund an independent Neuropsychological Evaluation; Dr. Cooper would contact M.S.'s parents by March 16, 2018, with an update regarding an Assistive Technology ("AT") evaluation they requested; M.S.'s reading teacher would provide M.S.'s parents with benchmark assessment scores and reading fluency scores by March 23, 2018; the draft IEP would go into effect with certain changes; an IEP meeting would occur within a reasonable amount of time after the Neuropsychological Evaluation; and an IEP meeting would take place at the beginning of the 2018-19 school year to review M.S.'s reading and writing goals and objectives. (PSOMF ¶ 90.)

Scotch Plains received the AT evaluation and recommendations on April 18, 2018. (PSOMF ¶ 91.) Rebimbas knew that M.S.'s parents were concerned about having the AT and training in place before the 2018-19 school year started. (PSOMF ¶ 98.) Rebimbas claimed Scotch

Plains could not implement the AT recommendations immediately because "it takes upwards of three months for a computer to [sic] from the factory to the School District." (PSOMF ¶ 99.)

Scotch Plains hired neuropsychologist Dr. Ann McDonald ("Dr. McDonald") to evaluate. (PSOMF ¶ 13.) Dr. McDonald diagnosed M.S. with "significant learning disorders in reading, writing, and mathematics, as well as Attention Hyperactivity Disorder (ADHD)" and explained that M.S.'s "significant and varied learning challenges can be best understood within the context of her dyslexia diagnosis." (PSOMF ¶¶ 14, 15.) Dr. McDonald reported in May 2018 that M.S.'s reading fluency was at a third-grade level at the end of her sixth-grade year and that the overall quality of her writing was well below what is expected for her age and grade. (PSOMF ¶ 16.)

In December 2018, four months after receipt of Dr. McDonald's report, Scotch Plains held an IEP meeting to revise M.S.'s IEP based on the report. (PSOMF ¶¶ 104-105.) M.S.'s parents expressed concern that it took Scotch Plains over six months after the March 2018 mediation to implement the AT recommendations. (PSOMF ¶ 106.) M.S.'s December 2018 IEP did not contain any spelling goals. (PSOMF ¶ 109.)

In January 2019, Jeanne Tighe, M.A., CCC-SLP, BCS-CL, a licensed Speech and Language Pathologist ("Tighe"), completed a Comprehensive Oral and Written Language Evaluation to identify M.S.'s language-based learning needs and to obtain specific recommendations for appropriate programming and supports. (PSOMF ¶ 19.) Tighe found that M.S. has a "very solid IQ and good intellectual ability, which informs expectations with respect to the pace at which she could possibly move through an intervention program" despite having significant difficulty with decoding, reading fluency, and spelling. (PSOMF ¶¶ 20, 21.) M.S. can nevertheless achieve literacy skills as long as her structured literacy intervention is applied with fidelity in the way the programming was designed. (PSOMF ¶ 27.)  "Structured literacy" is a

teaching instruction type with an identified scope and sequence. (PSOMF ¶¶ 50, 52.) It is the expected intervention for students with dyslexia. (PSOMF ¶ 51.) Orton-Gillingham is a structured literacy methodology that emphasizes multisensory learning. (ALJ Final Decision dated October 29, 2020 ("ALJ Op.") at 6, ECF No. 1-1.)[1] Given M.S.'s intellectual ability and potential for growth, Tighe expected M.S.'s decoding ability to be further along than it was in 2019. (PSOMF ¶ 42.)

On February 20, 2019, Scotch Plains conducted an annual review and proposed an IEP for the remainder of M.S.'s seventh-grade year through February 2020 of her eighth-grade year. (PSOMF ¶ 116.) Scotch Plains recommended that M.S. continue to have in-class resources in her general education Math, Writing, Science, and Social Studies classes and pull-out resources for Reading Decoding and Language Arts. (PSOMF ¶ 117.)

In the summer of 2019, Plaintiffs enrolled M.S. at The Cambridge School ("Cambridge") in Pennington, New Jersey. (Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("DSOF") ¶ 4, ECF No. 25-2.) Cambridge specializes in educating students with learning disabilities. (ALJ Op. at 2.)

### 1. *Administrative Process*

On June 12, 2019, Plaintiffs filed a petition for due process alleging that Scotch Plains denied M.S. a FAPE in violation of the IDEA and discriminated against her in violation of Section 504 and the ADA for the 2017-18, 2018-19, and 2020-21 school years. (PSOMF ¶¶ 2, 4, ALJ Op. at 2.) In the petition, Plaintiffs argued that M.S.'s lack of progress in Reading, Writing, and Math prevented her from accessing her education or making meaningful progress. (ALJ Op. at 2.)

---

[1] *See also The Orton-Gillingham Approach*, ORTON-GILLINGHAM.COM, https://www.orton-gillingham.com/approach/ (last visited April 16, 2024).

6

Plaintiffs sought compensatory damages and tuition reimbursement for M.S.'s placement at Cambridge (*Id.*) The petition was transmitted by the Department of Education, Office of Special Education to the Office of Administrative Law on July 12, 2019. (*Id.*) The ALJ held a seven-day hearing on Plaintiffs' petition on the following dates: November 19, 2019, November 20, 2019, March 9, 2020, March 11, 2020, June 8, 2020, June 29, 2020, and July 29, 2020. (PSOMF ¶3; ALJ Op. 2.) Scotch Plains offered four witnesses: Dr. Cooper, Rebimbas, Rasheeda Adams ("Adams"), and Jamie Powderly ("Powderly"). Dr. Cooper was admitted as a school psychology expert and a case manager. (PSOMF ¶¶ 11, 47.) Rebimbas was admitted as an expert in special education programming. (PSOMF ¶ 17.) Adams was M.S.'s fifth and sixth-grade teacher. (PSOMF ¶ 69.) She testified as a fact witness and was admitted as an expert special education teacher and learning disabilities teacher consultant. (*Id.*) Powderly was M.S.'s Reading Decoding teacher for the 2018-19 school year and was admitted as an expert in special education. (PSOMF ¶¶ 110,111.) Plaintiffs presented Tighe, who testified as an expert in speech and language pathology and educational programming for children with dyslexia in the areas of speech, language, reading, and writing. (PSOMF ¶ 18.) Plaintiffs also offered M.S., their minor child, as a witness.[2] (ALJ Op. at 15.) The record was closed on September 28, 2020, and the ALJ issued a decision on October 29, 2020. (ALJ Op. at 1-2.)

The ALJ found in favor of Scotch Plains. (*Id.* at 30.)

### 2. *ALJ's Credibility Determinations*

After consideration of the testimony and evidence offered by the parties, the ALJ made his credibility findings. (ALJ Op. at 17.) The ALJ found Defendant's witnesses competent and

---

[2] Plaintiffs also offered M.S., the minor child, as a witness. (ALJ Op. at 15.) The ALJ noted that "[w]hile unorthodox, and over objection by counsel for [Scotch Plains], [the ALJ] allowed limited testimony to be taken. The substance of this testimony was essentially which program M.S. preferred and why." (*Id.*) The ALJ ultimately concluded that the testimony was 'irrelevant." (*Id.*)

credible due to their credentials and personal involvement with M.S. and her educational programming. (*Id*.) The ALJ, also finding Tighe credible, concluded that Tighe's testimony that any program lacking her report recommendations is not appropriate for M.S. did not establish that Defendant denied M.S. a FAPE. (ALJ Op. 15, 17.)

### 3. ALJ's Findings of Fact

The ALJ found that M.S.'s IEPs were individualized for her academic abilities and accounted for her relative weaknesses in reading fluency and spelling due to her dyslexia diagnosis. (ALJ Op. 13.) Scotch Plains' programming for M.S. consisted of an in-class resource placement for Math, Science, and Social Studies, where M.S. had the assistance of a special-education teacher while maintaining access to the general-education curriculum and regularly engaging with peers. (*Id*.) To address M.S.'s decoding and encoding deficits, Scotch Plains placed M.S. in a pull-out resource class for Reading, Decoding, Language Arts, and Writing. (*Id*.) This pull-out resource class provided M.S. with a structured literacy program utilizing the Orton-Gillingham multisensory literacy method. (*Id*.) Scotch Plains also provided M.S. with assistive technology to compensate for her reading and spelling deficits and ensure that M.S. could access the general education curriculum. (*Id*.)

### 4. ALJ's legal Conclusions

Finally, the ALJ concluded that the Scotch Plains' IEP provided a FAPE, and therefore Plaintiffs' unilateral placement of M.S. at Cambridge was unreasonable. (ALJ Op. at 17.) The ALJ did not address M.S.'s claims under Section 504 and the ADA. (PSOMF ¶ 8.)

### 5. District Court Proceedings

Following the ALJ's decision, Plaintiffs commenced this action on January 28, 2021, seeking review of the ALJ's decision pursuant to 20 U.S.C § 1415(i)(2)(A). (Compl. ¶ 9.) Plaintiffs bring two counts against Scotch Plains for violation of the IDEA (COUNT I), and violation of

8

Section 504 and the ADA (COUNT II). (*See* Compl.) Because the parties did not intend to bring new evidence before the Court, the parties moved for summary judgment. (ECF Nos. 18, 25.)

**II.     LEGAL STANDARD**

"Where no new evidence has been presented to the Court, motions for summary judgment in an IDEA case are the procedural vehicle for asking the judge to decide the case based on the administrative record." *K.H. ex rel. B.Y. v. N. Hunterdon-Voorhees Reg'l High Sch.*, Civ. No. 05-4925, 2006 WL 2331106, at *4 (D.N.J. Aug. 10, 2006) (citing *G.A. ex rel. M.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003)). "The standard of review under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment." *M.A.*, 202 F. Supp. 2d at 359 (citation and internal quotation marks omitted). Though framed as summary judgment, the parties' motions are, in fact, appeals of the ALJ's ruling. *G.S. v. Cranbury Twp. Bd. of Educ.*, Civ. No. 10-774, 2011 WL 1584321, at *8 (D.N.J. Apr. 26, 2011), *aff'd*, 450 F. App'x 197 (3d Cir. 2011); *M.S. v. Mullica Twp. Bd. of Educ.*, 485 F. Supp. 2d 555, 566 (D.N.J. 2007), *aff'd*, 263 F. App'x 264 (3d Cir. 2008).

"When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). "Factual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citation and internal quotation marks omitted). "Moreover, the reviewing court must accept the ALJ's credibility determinations and 'may disturb them only upon a finding that non–testimonial extrinsic evidence justifies a contrary conclusion.'" *E.P. v. N. Arlington Bd. of Educ.*,

9

Civ. No. 17-08195, 2019 WL 1495692, at *4 (D.N.J. Apr. 1, 2019) (quoting *C.S. v. Montclair Bd. of Educ.*, Civ. No. 16-3294, 2017 WL 4122433, at *4 (D.N.J. Sept. 18, 2017)). On the other hand, an ALJ's legal determinations are reviewed *de novo*. *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011). "Applying these standards, the district court may make findings "based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education." *Id.* (quoting *Bayonne*, 602 F.3d at 564).

### III. DISCUSSION

After consideration of the administrative record and the parties' arguments, the Court grants Scotch Plains' motion for summary judgment. The Court finds that the ALJ correctly concluded that M.S.'s IEP provided a FAPE; therefore, Scotch Plains did not violate the IDEA, and Plaintiffs' unilateral placement of M.S. at Cambridge is not necessary or appropriate.

#### A. Count I: Violation of IDEA

Plaintiffs raise two major challenges to the ALJ decision. (*See* Compl., Plaintiffs' Motion for Judgment on the Administrative Record ("MFJ"), ECF No. 18.)[3] First, Plaintiffs allege that the ALJ "committed factual and legal error by giving more weight to the testimony of the District's witnesses[.]" (Compl. ¶ 72.) Second, Plaintiffs allege that "the ALJ's legal conclusions in this

---

[3] Plaintiffs also allege in Count I that the ALJ "erred by failing to consider the least restrictive environment requirements as applied to M.S." (Compl. ¶ 66.) However, an analysis for determining whether M.S. was offered a FAPE does not require a determination that M.S. was offered a program in the "least restrictive environment." *See L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 393 (3d Cir. 2006). In addition, Plaintiffs allege that the ALJ erred "by opining that M.S. made meaningful progress during the period in question without referring to any evidence in the record to support this conclusion." (Compl. ¶ 69). This allegation is also misplaced. The ALJ's 18-page decision that is accompanied by a lengthy list of exhibits in evidence reflects a "fact-specific, individualized analysis of [M.S.]'s circumstances and the accommodations." *See* K.N. v. Gloucester City Bd. of Educ., 379 F. Supp. 3d 334, 350 (D.N.J. 2019).

matter regarding FAPE claims [were] not thorough and careful." (Compl. ¶ 67.) The Court will address each challenge in turn.

### 1. *Witness Credibility Determinations*

The crux of Plaintiffs' Complaint rests on the ALJ's credibility determinations. Plaintiffs contend that the ALJ's determination that Scotch Plains offered M.S. a FAPE is based on a clearly erroneous decision to credit the testimony of Scotch Plains' witnesses and discount the testimony of Plaintiffs' witness. (MFJ at 7.) Specifically, Plaintiffs argue that Scotch Plains' witnesses lack the necessary expertise to testify to the appropriateness of programming for a child with dyslexia, are potentially biased because of their employment with Scotch Plains, or that they acknowledged the shortcomings in Scotch Plains' program. (MFJ at 10.) In addition, Plaintiffs argue that the ALJ's finding that Tighe's testimony "fell short of stating that the [Scotch Plain]'s programming denied FAPE" is clearly erroneous because Tighe repeatedly testified that Scotch Plains failed to provide a FAPE to M.S. (MFJ at 12.) Giving special weight to the credibility determinations of the ALJ, the Court disagrees.

While Plaintiffs argue that the ALJ failed to give appropriate weight to Tighe's testimony, they have not presented any new evidence and instead rely on the administrative record. Thus, this Court's review of witnesses and the weight to accord their testimony is limited to the administrative record. *N. Hunterdon-Voorhees Reg'l High Sch. Dist. Bd. of Educ.*, 778 F. App'x at 111.

There is no non-testimonial extrinsic evidence in the administrative record, and Plaintiffs have failed to point out any, which shows the ALJ clearly erred by affording more weight to the testimony of Scotch Plains' witnesses. The Final Decision discusses the testimony of each witness at length. (ALJ Op. at 2-13.) Powderly, an Orton-Gillingham-certified instructor, testified as an

11

expert in special education. (ALJ Op. at 6.) She testified that M.S.'s reading comprehension is strong, based on her scores on a test used to evaluate comprehension, and that her vocabulary was at or above grade level. Powderly also reviewed M.S.'s results on a fluency assessment and testified that M.S.'s ability to read accurately has improved over time. (ALJ Op. at 7.)

Ms. Adams, an International Dyslexia Association certified dyslexia practitioner and Orton-Gillingham-certified instructor, testified that M.S. made progress under the district's programming and that M.S.'s reading fluency had increased by twenty words per minute while M.S. was her student. (ALJ Op. at 5-6.)

Dr. Cooper testified that M.S. was showing progress under the district's programming. She testified that M.S. had a strong cognitive profile that is "solidly in the average range" and could access the curriculum at her grade level. (ALJ Op. at 3.)

Rebimbas testified regarding Dr. McDonald's findings from her independent neuropsychological evaluation of M.S. and subsequent discussions between Rebimbas and Dr. McDonald regarding the evaluation. (ALJ Op. at 11.) Specifically, Rebimbas testified that Dr. McDonald was very supportive of M.S.'s Reading Decoding course because it involves a multisensory, structured literacy approach with an Orton-Gillingham-certified teacher. (*Id.*) In addition, Rebimbas testified regarding M.S.'s standardized testing scores, noting that M.S.'s scores have improved each year from the third to sixth grade, with M.S. scoring above the proficiency level in the sixth grade. (*Id.*)

Based on her review of M.S.'s IEPs and observations of M.S.'s classes, Tighe testified that Scotch Plains' programming was inappropriate for M.S. because it did not comport with evidence-based, structured literacy instruction. (ALJ Op. at 8; MFJ at 22.) However, Tighe's concerns with Scotch Plains' implementation of structured literacy programming for M.S. are not enough to call

into question, much less to counter the contrary testimony found credible by the ALJ. *See L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 394 (3d Cir. 2006). Put simply, Plaintiffs' disagreement with the implementation of Scotch Plains' programming does not render the testimony found credible by the ALJ insufficient. *See id*.

### 2. *Plaintiffs' Contention that the ALJ's Decision was not "Thorough and Careful"*

The Court finds that the ALJ's decision was thorough and careful. Specifically, Plaintiffs argue to the contrary because it "contained no analysis of [FAPE] claims and disposes of them based on the conclusion that all four witnesses testified that M.S.'s IEP was individualized to meet M.S.'s needs in light of her disabilities[.]" (Compl. ¶ 67.)[4] The argument is not persuasive, as the Court finds that each of Scotch Plains' witnesses testified to support a finding that M.S. was offered a FAPE, and the ALJ did not err by affording more weight to these witnesses. Each of Scotch Plains' witnesses provided testimony that shows M.S.'s IEP was reasonably calculated to enable her to achieve passing marks and advance from grade to grade.

"When parents challenge [the adequacy of] a school's provision of a [FAPE] to a child, a reviewing court must (1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). For a disabled child who is integrated into a regular classroom, a reasonably calculated IEP will "enable the child to achieve passing marks and advance from grade to grade." *Endrew F. ex rel. Joseph F.*

---

[4] Plaintiffs also argue that the ALJ's decision was not thorough and careful because "[t]he ALJ held that 'M.S.'s [Individualized Education Program (IEP)] was not appropriate,' although [Plaintiffs] presented evidence regarding 4 separate IEPs." (MFJ at 2.) The Court is not persuaded that the ALJ's use of "IEP" in the singular amounts to a decision that is not "thorough and careful," as the decision references multiple school years and IEPs. (*See generally* ALJ Op.)

13

*v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 999, 197 L. Ed. 2d 335 (2017) (citation omitted). Importantly, Scotch Plains need not provide M.S. with the best possible education. *Rowley*, 458 U.S. at 192.

The ALJ was convinced, as is this Court, that M.S.'s IEP was reasonably calculated to enable M.S. to receive educational benefits as the testimony of each of Scotch Plains' witnesses shows that M.S. was enabled to achieve passing marks and advance from grade to grade. The record is devoid of any non-testimonial extrinsic evidence to contradict this finding. Tighe testified that for M.S. to have a FAPE, her IEP requires evidence-based, structured literacy instruction. In turn, Scotch Plains offered credible testimony that M.S. was provided with a structured literacy program utilizing the Orton-Gillingham multisensory literacy method. Although Plaintiffs prefer that M.S.'s IEP include the specific recommendations outlined in Tighe's report, M.S.'s IEP need not necessarily provide the particular "optimal level of services" that her parents might desire. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (citation omitted).

### B. Count II: Violation of Section 504 and the ADA

Plaintiffs contend that Scotch Plains violated Section 504 and the ADA by depriving M.S. of meaningful access to her educational program. (*See* MFJ at 22-26.) Scotch Plains contends that the administrative record has established that Scotch Plains offered and provided meaningful access to their educational programs and reasonable accommodations to M.S., a student with disabilities, and therefore did not violate section 504 and the ADA. (ECF No. 25 at 36-38.) The Court agrees.

"[Section] 504 of the Rehabilitation Act requires school districts receiving federal funding to provide a FAPE to each qualified handicapped person within the recipient's jurisdiction." *Blunt*

*v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) (citation omitted). Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

> Title II of the ADA provides similar safeguards. It states, in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. For cases considering the education of children with disabilities, the same standards apply to ADA and Section 504 claims. *Chisolm v. McManimon*, 275 F.3d 315, 325 n.9 (3d Cir. 2001); *see Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) ("[T]he same standards govern both [Section 504] and ADA claims.").

To establish a Section 504 or Title II violation, Plaintiffs must show that M.S. "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). "[A] plaintiff cannot succeed on a discrimination claim simply by proving (1) that [he] was denied some service and (2) [he] is disabled. [Instead, t]he [school] must have failed to provide the service for the sole reason that the child is disabled." *D.M. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, No. CV2207500GCRLS, 2024 WL 939693, at *17 (D.N.J. Mar. 5, 2024) (quoting

15

*H.R. v. W. Windsor-Plainsboro Bd. of Educ.*, Civ. No. 22-3103, 2023 WL 4744284, at *12 (D.N.J. July 25, 2023) (citations and quotation marks omitted)).

Scotch Plains does not dispute that M.S. has a disability and was otherwise qualified to participate in a school program. Thus, only the third element in *Chambers*, whether M.S. was denied the benefits of the program or was otherwise subject to discrimination because of her disability, is at issue here.

As noted above, the record does not support a finding that Scotch Plains denied M.S. a FAPE or otherwise subjected M.S. to discrimination based on her disability.[5] Therefore, because M.S. was not denied the benefits of Scotch Plains' program, the Court finds that Scotch Plains did not violate Section 504 or the ADA.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 18) is **DENIED**. Scotch Plains' motion for summary judgment (ECF No. 25) is **GRANTED**, and the ALJ's Final Decision is **AFFIRMED**. An appropriate Order follows.

**DATED**: May 20, 2024

JULIEN XAVIER NEALS
United States District Judge

---

[5] Plaintiffs do not argue any alternative grounds for discrimination.